UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ISAAC LABIDOU,

                          Plaintiff,

    -against-

THE CITY OF NEW YORK, a municipal entity; and
New York City Police Officers JOSEPH ROSCHBACH
(Shield # 25648), THOMAS ALESSI (Shield # 13286),
MICHAEL MARTINSEN (Shield # 6498), and
KENDRA MCFADDEN (Shield # 3416) all of whom are
sued individually and in their official capacities,

                          Defendants.

---------------------------------------------------------------- X

**FIRST AMENDED
COMPLAINT**

13-cv-2733  (JBW)(RML)

         Plaintiff ISAAC LABIDOU, by and through his attorneys Beldock Levine & Hoffman

LLP, for his complaint against the defendants named above alleges as follows:

### PRELIMINARY STATEMENT

1.      This is a civil rights action brought under 42 U.S.C. § 1983 for violations of rights

guaranteed to the plaintiff by the Fourth and Fourteenth Amendments to the United States

Constitution, and for violations of the laws of the State of New York by defendants THE CITY

OF NEW YORK ("CITY"), and New York City Police Officers JOSEPH ROSCHBACH ("P.O.

ROSCHBACH"), THOMAS ALESSI ("P.O. ALESSI"), MICHAEL MARTINSEN ("P.O.

MARTINSEN"), and KENDRA McFADDEN ("P.O. McFADDEN").

2.      Plaintiff seeks redress for substantial injuries he suffered when defendants unlawfully

assaulted, detained, frisked, arrested, and maliciously prosecuted him.  The defendant officers

approached plaintiff without any suspicion of any illegal activity while he stood texting on his

cell phone at a bus stop at the St. George Terminal on Staten Island.  P.O. ROSCHBACH

1

immediately started yelling at plaintiff, in sum and substance, that plaintiff shouldn't be touching a female. When plaintiff responded that he was not doing anything, P.O. ROSCHBACH yelled at plaintiff "Don't look at me like that!" and forcefully shoved plaintiff several times. Defendants then forcibly detained and frisked plaintiff, searched his backpack, arrested him, and falsely charged him with disorderly conduct, which was dismissed.

3.     Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

**JURY DEMAND**

7.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

**THE PARTIES**

8.      Plaintiff ISAAC LABIDOU ("plaintiff"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Richmond County, City and State of New York.

9.      Defendant CITY is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10.     Defendants NYPD Officers P.O. ROSCHBACH, P.O. ALESSI, P.O. MARTINSEN, and P.O. McFADDEN are NYPD Police Officers who unlawfully assaulted, detained, frisked and arrested plaintiff without suspicion of any illegal activity, lodged false criminal charges against him, seized and caused him to be maliciously prosecuted.

11.     At all times relevant herein, defendants P.O. ROSCHBACH, P.O. ALESSI, P.O. MARTINSEN, and P.O. McFADDEN acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

12.     At the times relevant herein, defendants P.O. ROSCHBACH, P.O. ALESSI, P.O. MARTINSEN, and P.O. McFADDEN violated clearly established rights and standards under the

3

Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

13.    Plaintiff personally served his Notice of Claim upon the CITY on July 31, 2012, within ninety days of the events giving rise to his claims.  Plaintiff appeared and was questioned at an administration hearing pursuant to New York General Municipal Law Section 50-h on December 18, 2012.  The CITY and the Comptroller have neglected and refused to adjust or pay plaintiff's claims.

14.    This action is filed within one year of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

15.    Plaintiff was born and raised in Richmond County.   He is an 18 year old African-American.

16.    Plaintiff's encounter with the police and subsequent arrest at St. George Terminal on May 3, 2012, was recorded on video by a security camera, which, upon information and belief, was remotely operated by the NYPD.

17.    On or about Thursday, May 3, 2012, at approximately 12:00 p.m., plaintiff, then 17 years old, went to the Staten Island Ferry bus terminal to catch a bus to visit his mother at the hospital; his mother had just undergone heart surgery.

18.    Plaintiff was accompanied by his then girlfriend, Olivia Salabarria ("Salabarria").

19.    Plaintiff and Salabarria were talking loudly to each other while they waited for the bus; neither plaintiff nor Salabarria touched or otherwise exerted any kind of physical force against each other while they waited for the bus.

4

20.     Upon information and belief, several persons walked past plaintiff and Salabarria as they spoke loudly to each other at the bus terminal; nobody stopped to watch them.

21.     Salabarria eventually walked away from plaintiff, who remained standing in the same area of the bus terminal and began to write a text message on his cell phone.

22.     While plaintiff was entering the text, he was approached by P.O. ROSCHBACH, who was followed by P.O. ALESSI, P.O. MARTINSEN, and P.O. McFADDEN.

23.     P.O. ROSCHBACH went directly up to plaintiff with a fierce and angry demeanor and began exclaiming at him in a loud and denunciatory voice, "Why were you touching her? You can't be touching a female!"

24.     Plaintiff, with his hands remaining at his side, asked P.O. ROSCHBACH what he was talking about and said he was just texting on his phone.

25.     P.O. ROSCHBACH then yelled at plaintiff, "Why are you looking at me like that? Why are you in my face? Don't look me in the eye!"

26.     P.O. ROSCHBACH then deliberately and intentionally shoved plaintiff in the chest with both of his hands, causing plaintiff to stumble several steps backwards; P.O. ROSCHBACH then continued shoving plaintiff in the chest and pushed him several more steps backwards until plaintiff was forced into a fence.

27.     Upon information and belief, P.O. ALESSI, P.O. MARTINSEN, and P.O. McFADDEN did nothing to intervene and protect plaintiff from P.O. ROSCHBACH's assault.

28.     Upon information and belief, P.O. ALESSI and/or P.O. MARTINSEN assisted or acquiesced in P.O. ROSCHBACH's actions by holding plaintiff against the fence and yelling at him.

29.     Upon information and belief, P.O. ROSCHBACH then told plaintiff to put his hands

behind his back and plaintiff complied.

30.     Upon information and belief, Salabarria heard the commotion P.O. ROSCHBACH was

causing and started walking to where the police officers were holding plaintiff.

31.     While plaintiff remained standing still with his hands behind his back, P.O.

ROSCHBACH and P.O. ALESSI and/or P.O. MARTINSEN each deliberately and intentionally

grabbed one of plaintiff's arms, pushed him away from the fence and forcibly bent him over.

32.     P.O. ROSCHBACH then deliberately and intentionally forced plaintiff's left arm up

sharply behind his back, causing plaintiff extreme pain; plaintiff instinctively pulled his arm

away from P.O. ROSCHBACH and yelled out that the officers were hurting him.

33.     P.O. ROSCHBACH did not alter his conduct in any way in response to plaintiff's

exclamations of pain.

34.     Plaintiff was then spun around by P.O. ROSCHBACH and the other police officer,

further twisting his arm.

35.     As plaintiff was spun around, he was turned into Salabarria who was trying to find out

why the officers were attacking him.

36.     P.O. ROSCHBACH, P.O. ALESSI, P.O. MARTINSEN, and/or P.O. McFADDEN then

forced plaintiff and Salabarria into a fence.

37.     One of the officers forcibly separated Salabarria from the rest of the group by violently

grappling with her and pulling her hair.

38.     After Salabarria was separated, the police officers released plaintiff from their grips.

39.     Plaintiff asked the police officers why they had attacked him for no reason and attempted

to enter their badge numbers into his phone; the police officers responded by telling plaintiff to

calm down.

40.     Upon information and belief, only one person stopped to watch this incident involving plaintiff, Salabarria and the police; this person was an Administration of Children Services worker named Tyriq, who watched from a distance of approximately 12 feet.

41.     Upon information and belief, Tyriq filmed the encounter between plaintiff and the police on his Iphone.

42.     Tyriq told plaintiff that he would be a witness for him and attempted to give plaintiff his contact information.

43.     Upon information and belief, the police officers told Tyriq to "mind his own business" and "move on"; Tyriq remained at the scene and waited for an opportunity to give plaintiff his contact information, which he eventually did.

44.     While a police officer continued to talk to plaintiff and ask him questions, another officer took plaintiff's backpack away from him, walked away with it, and proceeded to open the backpack and go through its contents.

45.     Plaintiff was eventually told that he was being arrested for disorderly conduct and because the police officers, after running a background check on plaintiff, had learned he had two outstanding warrants against him for alleged misdemeanors: consumption of alcohol on street and unlawful possession of marijuana.

46.     Plaintiff was given a pat down search, placed in handcuffs and taken to the 123rd Precinct, where P.O. ROSCHBACH processed plaintiff's arrest.

47.     In his memo book, P.O. ROSCHBACH reported the incident as follows: "1214 Male and female stopped when questioned Male became uncooperative and started acting in a threatening manner . . ."

48.     The video recording of plaintiff's arrest contradicts these statements made by P.O.

7

ROSCHBACH in his memo book and shows them to be substantially untrue.

49.    Upon information and belief, P.O. ALESSI did not report plaintiff's arrest in the lined section of his memo book where the rest of his tour for that day was recorded, but wrote on blank sides of nonconsecutive pages of his memo book:

> 5/3/12 On May 3, 2012 I was working with Officer Roschbach. We were patrolling the terminal when a man approached us saying "theres a guy upstairs beating up his GF.' Myself, Officer Roschbach, and Officer McFadden proceeded to the E Ramp where the deft was observed holding his GF by the wrist against the wall. The deft had his back to us. At this point we were 100 ft away, when his GF spotted us and started walking away, After he let her go. He began walking towards us in an aggressive manor [sic] and shouting – I didn't fucking do anything! I We said sir, Lower your voice, what happened? He said don't fucking talk to me! He continued to act in a beligerant manor [sic] when we to explain [sic] why we were approaching him. He chested [sic] bumped my partner, P.O Roschbach, who pushed him away. We restrained him against the wall, and told him to calm down, we just came over to talk to you. We asked for ID, he refused. At this point a crowd had gathered, and were told to disperse due to our safety being put in jeopardy. We asked the deft to remove his backpack, he refused, continued to curse and resist. His GF became disorderly and had to be restrained as well, she received a summons. Officer Roschbach did a warrant check on deft, he showed have [sic] an outstanding warrant and was taken into custody. He asked the deft for ID 3 times, he constantly refused. Because of his beligerant behavior, we restrained him for our safety.

50.    The video recording of plaintiff's arrest contradicts these statements made by P.O. ALESSI in his memo book and shows them to be substantially untrue.

51.    P.O. McFADDEN reported the incident involving plaintiff in the lined section of her memo book as a "10-52," a non-criminal dispute, but wrote on a unlined, blank page in her memo book, "Omitted Entry 1205: Unk male stated a male was outside beating a female 'bloody' on old taxi ramp."

52.    In the arrest report, P.O. ROSCHBACH stated, "AT T/P/O A/O WAS INFORMED BY

A UNRELATED PARTY THAT THE DEFT. WAS ENGAGED IN A DISPUTE. WHEN A/O

APPROACHED THE DEFT. HE BEGAN ACTING IN A THREATENING MANNER

CAUSING A PUBLIC ALARM AND PLACING THOSE AROUND HIM IN FEAR OF

PHYSICAL INJURY. . ."

53.     The video recording of plaintiff's arrest contradicts these statements made by P.O.

ROSCHBACH's in his Arrest Report for plaintiff and shows them to be substantially untrue.

54.     P.O. ROSCHBACH additionally filled out a Disorderly Conduct/OGA 2nd Degree

Supporting Deposition, in which he stated: "At T/P/O A/O was informed by unrelated party that

the deft was engaged in a dispute when A/O Approced [sic] the deft he began yelling and

Raising his arms at the A/O. The deft became further enraged cursing and yelling louder placing

those around him in fear of physical injury as well as causing a public alarm to pedestrians

passing by causing a crowd to form Deft was yelling loudly "don't fucking come near me"

"don't fucking touch me".

55.     The video recording of plaintiff's arrest contradicts these statements made by P.O.

ROSCHBACH's in his supporting deposition and shows them to be substantially untrue.

56.     P.O. ROSCHBACH supporting deposition additionally states that plaintiff's actions were

performed in front of approximately 8 people, who were approximately 10 feet away from him,

and that plaintiff's actions were likely to cause annoyance, alarm and public inconvenience to

these people.

57.     The video recording of plaintiff's arrest contradicts these statements made by P.O.

ROSCHBACH's in his supporting deposition and shows them to be substantially untrue.

58.     The supporting deposition further indicates that P.O. ROSCHBACH understood that false

statements made within his supporting deposition were punishable as a class A misdemeanor

pursuant to Penal Law § 210.45.

59.    While being processed, plaintiff asked P.O. ROSCHBACH if he could make a phone call to his mother to let her know what had happened to him.

60.    Upon information and belief, the pay phone at the 123rd Precinct costs a dollar to make a phone call; P.O. ROSCHBACH gave plaintiff a quarter and told him to look in his pockets for change.

61.    Plaintiff was not able to make a phone call to his mother because he had given Salabarria everything that was in his pockets before the police had taken him away from the bus terminal, including his loose change.

62.    Plaintiff also told P.O. ROSCHBACH that he wanted to go to the hospital to have his arm looked at because it was still causing him great pain; P.O. ROSCHBACH deliberately and intentionally ignored plaintiff's request.

63.    Plaintiff was searched, photographed, fingerprinted and eventually placed in a holding cell at the 123rd Precinct, where he remained until the next morning when he was transferred to Central Booking.

64.    At Staten Island Central Booking, plaintiff was again patted down and searched.

65.    Plaintiff was confined at Staten Island Central Booking for approximately 3 hours before being brought before a judge.

66.    On or about the late morning/early afternoon of May 4, 2012, plaintiff was arraigned in Richmond County Criminal Court and released on his own recognizance.

67.    Plaintiff appeared in Richmond County Criminal Court a number of additional times; at his last appearance, the charge against plaintiff for Disorderly Conduct was dismissed.

68.    Plaintiff was not engaged in any activity that was in violation of any law during the

events described above; defendants had no probable cause to arrest plaintiff.

69.     At all times relevant herein, the individual defendant police officers were engaged in a joint venture.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

70.     Defendants' conduct caused plaintiff to suffer personal injury, loss of liberty, loss of income, emotional and psychological pain, embarrassment, humiliation, and harm to his reputation.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights**

71.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

72.     In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a.    the right to be free from unreasonable search and seizure of his person;

    b.    the right to be free from arrest without probable cause;

    c.    the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent;

    d.    the right to be free from the lodging of false criminal charges against him by police officers;

    e.    the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor;

    f.     the right to be free from abuse of process;

    g.     the right to be free from deprivation of liberty without due process of law; and

    h.     **the right to equal protection, privileges, and immunities under the laws.**

73.    As a direct and **proximate** result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

74.    The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### *Respondeat Superior*

75.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.    At all relevant times, defendants were employees of the City and were acting within the scope of their employment.

77.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendant NYPD Officers set forth herein.

## THIRD CAUSE OF ACTION
### Violations of the New York State Constitution

78.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79.    Defendants subjected plaintiff to the foregoing acts and omissions without due process of law, thereby depriving plaintiff of rights, privileges, and immunities guaranteed by Article 1, §§ 1, 6, and 12 of the New York State Constitution, including, without limitation, the following:

a.   Plaintiff was deprived of his rights and privileges guaranteed by Article 1, § 1 of the New York State Constitution;

b.   Plaintiff was deprived of his right to due process guaranteed by Article 1, § 6 of the New York State Constitution; and

c.   Plaintiff was deprived of his right to be free from unreasonable searches and seizures guaranteed by Article 1, § 12 of the New York State Constitution.

80.   As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

## FOURTH CAUSE OF ACTION
### Assault and Battery

81.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82.   Defendants, without just cause, wilfully and maliciously used physical force against plaintiff causing his injuries.

83.   Defendants committed the foregoing acts intentionally, wilfully, and with malicious disregard for plaintiff's rights, and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### False Imprisonment

84.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.   Defendants, through the foregoing acts, caused plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent.

86.     Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Malicious Prosecution

87.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     Defendants, through the foregoing acts, maliciously commenced a criminal proceeding against plaintiff, which ended in his favor, without probable cause to believe plaintiff was guilty of the crimes charged.

89.     Defendants committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

90.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     Defendants, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

92.     Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

14

## EIGTH CAUSE OF ACTION
### Negligence

93.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.    Defendants owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

95.    Defendants, by the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

96.    All of these acts were performed without any negligence on the part of plaintiff and were the proximate cause of injuries to plaintiff.

## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

97.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.    As police officers acting in the performance of their duties, defendants owed plaintiff a duty of care.

99.    In breach of that duty, defendants foregoing conduct endangered plaintiff's safety and caused him to fear for his safety.

100.    As a result, plaintiff suffered emotional distress.

<u>TENTH CAUSE OF ACTION</u>

Conspiracy

101.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102.    While in the course of their duties and under color of law, defendants conspired to injure and damage plaintiff in order to justify defendants', most particularly P.O. ROSCHBACH's, unlawful assault and arrest of plaintiff.

103.    Upon information and belief, in furtherance of this conspiracy, defendants conferred and agreed to falsely charge plaintiff with disorderly conduct thereby depriving Plaintiff of his rights to equal protection and equal privileges and immunities under the law in contravention of the Fourteenth Amendment of the United States Constitution.

104.    Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiff's rights and are therefore liable for punitive damages.

16

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiff demands the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages from defendants NYPD Officers P.O. ROSCHBACH, P.O. ALESSI, P.O. MARTINSEN and P.O. McFADDEN to the extent allowable by law;

(c)    attorneys fees;

(d)    the costs and disbursements of this action;

(e)    interest; and

(f)    such other and further relief as this Court deems just and proper.

Dated: New York, NY
      November 15, 2013

                      BELDOCK LEVINE & HOFFMAN LLP
                      99 Park Avenue, Suite 1600
                      New York, New York 10016
                      (212) 490-0400

                      Marc A. Cannan

                      *Attorneys for Plaintiff Isaac Labidou*

17